## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 08-CR-0039-CVE** |
| | ) | |
| **MIKEL DEANDRAE FERRYING,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendant's Motion to Suppress and Brief in Support (Dkt. # 10). Defendant Mikel Deandrae Ferrying is charged with possession with intent to distribute of 50 grams or more of cocaine base (crack) and possession of a firearm in furtherance of a drug trafficking crime. Dkt. # 2. He claims that police conducted a consent search of his car on February 8, 2008 during a traffic stop, but he did not voluntarily consent to the search. Defendant's motion to suppress also implies that he is challenging the validity of the traffic stop, because he suggests that police had a "questionable basis" for the traffic stop. Dkt. # 10, at 2. He asks the Court to suppress any evidence seized during the search, including a firearm and cocaine base (crack) found in his vehicle. Construing defendant's motion broadly, he could also be arguing that he did not voluntarily waive his Miranda rights and that any statements made after his arrest should be suppressed.

### I.

On February 8, 2008, Mikel Ferrying was driving south on North Hartford Avenue in Tulsa, Oklahoma. Tulsa Police Department ("TPD") Officers Dianna Liedorff and William Jenkins were driving north on North Hartford Avenue and observed that the muffler of Ferrying's car was smoking excessively. Officer Liedorff was driving and Officer Jenkins was in the passenger seat.

Officer Liedorff turned around and began to drive south on North Hartford Avenue. Ferrying stopped at a red light and made a right turn "on red" onto East 36th Street North. When making the right turn, he pulled out in front of another vehicle and almost caused an accident. Officer Liedorff initiated a traffic stop by pulling up behind Ferrying and activating her flashing lights and siren. Ferrying pulled into a convenience store parking lot at 500 E. 36th St. North. Officers Liedorff and Jenkins testified that they observed Ferrying lean forward and they saw his shoulders moving. Officer Liedorff testified that defendant's behavior raised concerns that he could have a weapon in his vehicle.

Officer Jenkins approached the driver, Ferrying, and asked for his driver's license and proof of insurance. Ferrying provided proof of insurance and a letter from the Oklahoma Department of Public Safety that allegedly served as his license. The officers checked Ferrying's license on Officer Liedorff's laptop computer, and the "teletype" notification[1] was that Ferrying's license was suspended due to a previous conviction for driving under the influence of alcohol. The letter from the Department of Public Safety shows that Ferrying was issued a temporary license that was valid until February 21, 2008, and Officer Liedorff intended to question Ferrying about the status of his license. Officer Liedorff approached Ferrying's car with her citation book and asked Ferrying to step out of his vehicle. She noticed that Ferrying's eyes had a glazed appearance and this suggested that Ferrying might be intoxicated. She questioned Ferrying about his license and he stated that he had been convicted of driving under the influence. She asked if Ferrying had any open containers and he said "no." Officer Liedorff asked Ferrying if he would consent to a search of his car and, after a brief hesitation, he said "go ahead." Both officers testified that their guns were holstered

---

[1]      This notification appeared on the computer screen; it was not a separate document.

during the stop.  Officer Liedorrf testified that she did not use a threatening tone of voice and she did not make any threats or promises to Ferrying before seeking his consent to search his vehicle. Officer Jenkins was standing about six feet away on the passenger side of the car and heard Officer Liedorff's conversation with Ferrying.

Officer Liedorff remained with Ferrying while Officer Jenkins searched for open containers inside the vehicle.  Officer Jenkins testified that he opened the passenger door of the car and saw a pistol and a plastic baggie containing a substance that appeared to be cocaine base (crack) located on the driver's side floorboard almost directly under the driver's seat.  Officer Jenkins immediately approached Ferrying and placed him in handcuffs.  Officer Liedorff testified that she looked into the vehicle from the passenger side and saw the pistol and baggie on the floorboard approximately where the driver's foot might have been located.  The pistol was a chamber loaded .25 caliber semi-automatic pistol with an additional 6 rounds in a magazine.  The baggie contained 62.64 grams of cocaine base (crack) and Officer Liedorff observed that the substance was wet.  This suggested that the cocaine base (crack) was recently "cooked."  Police also recovered two cell phones and $90 in cash from Ferrying's person.  Ferrying was arrested and he repeatedly asked why he was going to jail.  The police report states that Ferrying voluntary stated, without interrogation, that he had just purchased the car a week before.[2]  Ferrying's insurance card showed that he had insurance on the vehicle from November 1, 2007 to May 1, 2008 and this evidence contradicted his statement.

---

[2]     At the suppression hearing, neither side questioned Officer Liedorff or Officer Jenkins about events occurring after the search of the vehicle.  The Court reviewed Officer Liedorff's police report to determine what happened after the search, because defendant's motion to suppress suggests that he seeks to suppress statements made to police following the search. The facts stated in this Opinion and Order concerning defendant's post-search statements come from the police report, rather than any testimony presented at the suppression hearing. See Dkt. # 13, Ex. C.

Officer Liedorff transported Ferrying to Uniform Division North and read him his <u>Miranda</u> rights.  Ferrying read and signed a written waiver.  Ferrying denied ownership of the drugs and claimed that many other people used the car.  He stated that he just received the keys back from another person on February 7, 2008 and later changed his story to reflect that "he just got the keys back." <u>Id</u>.

## II.

The Court has construed defendant's motion to suppress broadly and finds that he could be raising three separate constitutional challenges.  First, defendant could be challenging the validity of the traffic stop, because his motion to suppress implies that police did not observe a traffic violation before initiating the traffic stop.  Second, defendant claims that he did not voluntarily consent to a search of his vehicle and any evidence seized as a result of the search should be suppressed.  Third, defendant could be challenging the admissibility of statements he made to police following his arrest.

<u>Traffic Stop</u>

Defendant challenges the voluntariness of his consent on the ground that police had a questionable basis for initiating a traffic stop.  This issue does not go to defendant's consent but, instead, is an argument that police lacked reasonable suspicion to believe that a traffic violation had occurred.

A traffic stop is treated as an investigative detention, and such a stop is governed by the standards set forth in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).  <u>United States v. Bradford</u>, 423 F.3d 1149, 1156 (10th Cir. 2005).  When determining the reasonableness of a traffic stop, a court must make two separate inquiries.  First, did the police officer have a valid reason for initiating the traffic stop.

4

United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995).  "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."  Id.  Second, a traffic stop must not become an unnecessarily lengthy detention, but must be limited in scope to the purpose of the initial traffic stop.  United States v. Rice, 483 F.3d 1079, 1083 (10th Cir. 2007).  A police officer may extend the length of the traffic stop for questioning beyond the initial purpose of the traffic stop only if the officer has "an objectively reasonable and articulable suspicion that illegal activity has occurred, or the driver voluntarily consents to further questioning."  United States v. Ramirez, 479 F.3d 1229, 1243 (10th Cir. 2007).

The government has cited Oklahoma statutes showing that each of defendant's alleged infractions was a traffic violation under Oklahoma law that may provide a basis for a traffic stop. Under OKLA. STAT. tit. 47, § 12-402, every motor vehicle must be "equipped with a muffler in good working order and in constant operation to prevent excessive or unusual noise and annoying smoke . . . ."  Police observed defendant operating a vehicle with a defective muffler emitting excessive smoke and this constituted a violation of Oklahoma law.  Although defense counsel questioned Officers Liedorff and Jenkins about the possibility that defendant's car could be emitting vapor instead of smoke, both officers testified that they clearly saw smoke coming from the vehicle and the Court finds that their testimony is credible.  Likewise, failing to yield to oncoming traffic with the right-of-way is also a violation of Oklahoma law.  OKLA. STAT. tit. 47, § 11-403.  The evidence shows that defendant pulled out in front of another vehicle and nearly caused a collision. Although defendant calls the basis for the traffic stop "questionable," the government has presented credible evidence that his conduct clearly constituted two separate traffic violations.  Concerning the second

prong of Terry, there is no evidence that the traffic stop lasted an unreasonable amount of time.

Thus, the traffic stop was valid under Terry.

Consent

Defendant argues that he did not voluntarily consent to a search of his car, and any evidence seized during the automobile search should be suppressed.  The general rule is that warrantless searches violate the Fourth Amendment, but there are several exceptions to this rule.  United States v. Lyons, 510 F.3d 1225, 1239 (10th Cir. 2007).  The government has the burden to prove that an exception to the warrant requirement applies.  United States v. Maestas, 2 F.3d 1485, 1491 (10th Cir. 1993).  "A valid search may be made of a vehicle without a warrant or probable cause when a person in control of the vehicle has given his voluntary consent to search."  United States v. Santurio, 29 F.3d 550, 552 (10th Cir. 1994).

> Whether voluntary consent was given is a question of fact, determined by the totality of the circumstances . . . .  We have utilized a two-part test to make this determination: "First, the government must proffer 'clear and positive testimony that consent was unequivocal and specific and freely given.'  Furthermore, the government must prove that this consent was given without implied or express coercion."

United States v. Zubia-Melendez, 263 F.3d 1155, 1162 (10th Cir. 2001) (internal citations omitted). In automobile cases, the Tenth Circuit has suggested many factors that a district court can consider when a defendant challenges the voluntariness of his consent, such as the number of officers present, whether the officer displayed his weapon, the prolonged retention of a person's personal effects, the length of the traffic stop, the officer's tone of voice, the officer's failure to warn a person when the encounter is over, the officer's failure to warn a person that he or she does not have to consent to a search, and whether the stop occurred in a public location.  United States v. Ledesma, 447 F.3d

6

1307 (10th Cir. 2006); United States v. Sawyer, 441 F.3d 890 (10th Cir. 2006); United States v. Rosborough, 366 F.3d 1145 (10th Cir. 2004); Zubia-Melendez, 263 F.3d at 1163.

Defendant claims that several factors suggest that his consent to the automobile search was not voluntary, such as "a questionable basis for the stop; the presence of several officers; expressed hesitation at the officer's request for consent; and no steps taken to determine the officer's suspicion that the defendant was driving under the influence." Dkt. # 10, at 2. The Court has found that the basis for the stop was not questionable and, in any event, this issue goes to the legitimacy of the traffic stop under Terry, rather than the voluntariness of defendant's consent. There were two police officers present and this does not suggest that defendant could reasonably have been threatened by the number of law enforcement officers present during the stop. Neither Officer Leidorff nor Officer Jenkins drew her/his weapon during the stop. The Court finds, based on the testimony, that the Officer Liedorff did not use a threatening tone of voice or engage in any coercive conduct to obtain defendant's consent. There is no indication that the traffic stop was particularly lengthy or that police continued the stop beyond its initial purpose. Officer Liedorff had not finished writing a citation before asking for defendant's consent and she did not have to warn him that he was free to leave. It does not appear that police informed defendant he could refuse to consent to the search, and this is a factor supporting defendant's argument that his consent was involuntary. United States v. Orrego-Fernandez, 78 F.3d 1497 (10th Cir. 1996). However, this factor alone is not enough to show that defendant's consent was involuntary.

Defendant's motion to suppress raises two factual issues that allegedly show his consent was not given voluntarily.[3]  First, he claims that the police officers were aware that defendant could be intoxicated but took no steps to ensure that was capable of consenting.  Second, defendant hesitated slightly before consenting to the search and he claims that police should have questioned him further to make sure that he voluntarily consented to the search of his car.  Concerning the first argument, there is no evidence suggesting that defendant's level of intoxication interfered with his ability to consent.  Officer Liedorff testified that defendant's eyes appeared glazed, but his behavior did not indicate that he was completely intoxicated.  She testified that defendant was able to walk and his speech was not slurred.  Even if defendant's driving suggested that he could be slightly intoxicated, Officer Liedorff did not believe that defendant was intoxicated to the point that he could not voluntarily consent to a search.  The Court finds her testimony credible and finds that defendant was capable of consenting to the search.  As to defendant's hesitation before consenting, the Court finds that this does not render his consent involuntary.  Officer Liedorff testified that defendant hesitated slightly before saying "go ahead," but she believed that his affirmative response to her question was unambiguous.  A slight hesitation before consenting to a search does not generally render a person's consent involuntary.  <u>United States v. West</u>, 219 F.3d 1171, 1177 (10th Cir. 2000) (defendant's

---

[3]       At the suppression hearing, defense counsel repeatedly inquired about the information provided by "teletype" and suggested that "teletype" inaccurately showed that defendant's license was suspended.  This factual issue is irrelevant to the arguments raised in defendant's motion to suppress.  The evidence clearly shows that Officer Liedorff had a legitimate basis to initiate a traffic stop because, regardless of the status of defendant's license, he was driving a car with a defective muffler and he made an improper right turn on a red light.  He was not pulled over for driving with an invalid license.  Even if the Court were to assume that there was some discrepancy between the information provided by "teletype" and defendant's temporary license, this does not affect the Court's rulings on the legitimacy of the traffic stop or the voluntariness of defendant's consent.

hesitation before consenting to a search of his car did not show that consent was involuntary, because there was no evidence that police threatened defendant or applied pressure to encourage defendant to consent).  Here, defendant's response, "go ahead," indicated that he consented to a search of his car and he did not attempt to revoke his consent through any subsequent statements or conduct.  Without some other evidence suggesting that defendant's consent was involuntary, the mere fact that he hesitated slightly before consenting does not show that his consent was involuntary.

Considering all of the evidence, the Court finds that defendant voluntarily consented to a search of his car.  The only evidence suggesting that defendant's consent was not voluntary is that defendant hesitated slightly before consenting and Officer Liedorff failed to advise defendant that he could refuse Officer Liedorff's request to search the car.  However, neither Officer Liedorff nor Officer Jenkins threatened defendant or displayed a weapon before defendant's consent was sought and Officer Liedorff did not use a harsh tone of voice when asking for defendant's consent.  The length of the traffic stop was not unreasonable and, at the time Officer Liedorff asked for consent, she had not completed a traffic citation and was still acting within the scope of the initial traffic stop.  Defendant's response to Officer Liedorff's request for consent was unequivocal and he did not subsequently attempt to revoke his consent.  The government has provided credible evidence that defendant voluntarily consented to a search of his car and the motion to suppress should be denied on this ground.

Admissibility of Defendant's Statements

Defendant's motion to suppress implies that he is challenging the admissibility of statements made after his arrest on the way to Uniform Division North and during a post-arrest interrogation.

9

Neither party presented evidence on this issue at the suppression hearing.  However, defendant's motion to suppress seeks to exclude evidence under the Fifth Amendment of the United States Constitution; defendant made post-arrest statements, and the admissibility of defendant's statements should be considered.

In <u>Miranda v. United States</u>, 384 U.S. 436 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." <u>Id</u>. at 444.  Under this rule, the court must suppress a statement, even if voluntary, if a proper warning was not given before police initiated custodial interrogation of a suspect.  <u>United States v. Patane</u>, 542 U.S. 630 (2004); <u>United States v. McCurdy</u>, 40 F.3d 1111, 1117 (10th Cir. 1994).  However, the fruit of the poisonous tree rule does not apply even if defendant successfully proves that police obtained a statement through custodial interrogation without giving a <u>Miranda</u> warning.  <u>United States v. Pettigrew</u>, 468 F.3d 626, 636 (10th Cir. 2006).  The <u>Miranda</u> exclusionary rule requires only that the court exclude any "unwarned statement" itself.  <u>Oregon v. Elstad</u>, 470 U.S. 298, 307 (1985).

Defendant does not dispute that he received a <u>Miranda</u> warning and he waived his <u>Miranda</u> rights.  However, he argues that his waiver was involuntary and any statements he made following his arrest should be suppressed.  The government bears the burden to prove by a preponderance of the evidence that defendant voluntarily waived his <u>Miranda</u> rights.  <u>Colorado v. Connelly</u>, 479 U.S. 157, 168-69 (1986).  The Court must consider the totality of the circumstances to determine whether defendant's waiver was voluntary.  <u>United States v. Hernandez</u>, 93 F.3d 1493, 1051 (10th Cir.

1996).  The Tenth Circuit has identified five factors that should be considered by a court when determining whether a Miranda waiver was voluntary:

> (1) the age, intelligence, and education of the defendant; (2) the length of [any] detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of [his or] her constitutional rights; and (5) whether the defendant was subjected to physical punishment."

United States v. Carrizales-Toledo, 454 F.3d 1142 (10th Cir. 2006) (quoting United States v. Glover, 104 F.3d 1570, 1579 (10th Cir. 1997)).  These factors are not exclusive and a court should consider any other evidence showing that "the government obtained the statements by physical or psychological coercion such that the defendant's will was overborne."  Id. (quoting United States v. Rith, 164 F.3d 1323, 1333 (10th Cir. 1999)).

Applying the Carrizales-Toledo factors, the Court finds that defendant voluntarily waived his Miranda rights and any statements he made to police following his arrest should not be suppressed.  Based on the police report, defendant was 25 years old at the time of his arrest, but no information about his educational background is provided.  Defendant has not presented any evidence that he was subject to a lengthy detention or interrogation or that police engaged in physical or psychological coercion.  Defendant was advised of his Miranda rights and executed a written waiver. The voluntariness of defendant's waiver is supported by the fact that he made only exculpatory statements to police and he was not encouraged to make incriminating statements.  This suggests that police questioned defendant and, when it became apparent that defendant did not intend to admit to any criminal conduct, ended the interrogation.  In summary, there is no credible evidence showing that defendant's waiver of his Miranda rights was involuntary, and his statements to police should not be suppressed.

11

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress and Brief in Support (Dkt. # 10) is **denied**.

**DATED** this 2nd day of December, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT